Now, I will give the speech I always give about splitting argument. I wish I'd been told that you were going to do it. It's a very bad idea. You've already decided to do it, so go ahead, but it's never helpful to us because we may not be interested in what you're interested in talking about, and the lawyers have to be flexible, as far as I'm concerned, to discuss whatever we want to discuss and not what you've decided you want to discuss. So my advice is never do it again. Go ahead. Thank you, Your Honor. Good morning, duly noted. May it please the Court, Brandon Mayfield here on behalf of Plaintiff Appellant Mr. Yonas Fikre this morning. I will be primarily addressing the mootness voluntary cessation issues, but I'm prepared to answer any questions that you may have, and my co-counsel, Mr. Abbas, will address any stigma-related or jurisdiction issues. In 2018, this Court issued a clear, well-reasoned, and detailed opinion stating that plaintiff's case was not moot, why, and specifically how it could be mooted. And this Court's discussion focused almost entirely on the voluntary cessation doctrine's applicability and over 75 years of precedent, including the U.S. Supreme Court and Ninth Circuit opinion, which outlined the contours of its application. And the only remarkable event since the last time this Court heard Fikre's appeal was the submission of a single declaration, an amendment of plaintiff's claims to include additional TSTB watchlist claims and to further strengthen his stigma-related allegations. So the parties are primarily in agreement what remains of the key issues in the present case, and that's whether the declaration provided by the government is sufficient to moot the case and whether Mr. Fikre has sufficiently pled fact to support a claim of stigmatization. As to the mootness issue, this Court's previous ruling makes it clear that the declaration alone does not moot Fikre's claims. At the outset of its previous opinion, this Court reminded the parties that the federal courts still have power to hear and determine the case unless there's no reasonable expectation that the alleged violation will recur, and more importantly, that interim relief for events have completely and irrevocably eradicated the effect of the alleged violation. That's at page 8 of this Court's 2018 Fikre opinion, citing County of Los Angeles v. Davis Supreme Court opinion. And that, we are arguing, has not been done. The government's declaration by itself does not do that. The Court, also in its opinion, pointed out that although voluntarily legislative change can often moot an action, executive action that's not governed by any clear codified procedures cannot moot a claim, citing to this Court's McCormick decision. And for cases in between those two extremes... I understand the current declaration to be assuring Fikre that he will not be banned from flying for the same reasons that prompted the government to add him to the list in the first place. I do not understand that that's what they said. Do you understand that that's what they said? Could you repeat the question, Your Honor? Yes. The former opinion, one of the things it says is the government has not assured Fikre that he will not be banned from flying for the same reasons that prompted the government to add him to the list in the first place, nor has it verified the implementation of procedural safeguards. Have they now assured him of either of those things? No, Your Honor. For sure they haven't verified the implementation of procedural safeguards, conditioning its ability to place Fikre on the list again based on the receipt of new information. It hasn't done that at all. As far as the first step that this Court hinted or encouraged, this Court said you must assure the plaintiff that he would not be banned from flying for the same reasons that prompted the government to add him in the first place. That's at page 14. No, they didn't even say that. I mean, my understanding of what they said was he was placed in the no-fly list in accordance with applicable policies and procedures, i.e., properly is my understanding, in the first place. And then they said that he no longer satisfies the criteria for placement on a no-fly list and he will not be placed based on currently available information, which certainly could mean, must mean in light of the first sentence, that something about him changed and that based on his current situation, what's currently available about him, he won't be. But they never said that he wasn't, he wouldn't be placed back for the same reasons he was put on the first place if those factors, if that situation were true again. Am I reading this wrong? You're reading it absolutely correctly, Your Honor, and that's plaintiff's position as outlined in its appellant's opening brief and the reply because you're making a distinction between reasons and information and they're different as we used a hypothetical scenario in the reply. But I'm also making, the main thing that seems to me is that he could have, his circumstances could have changed such that he was probably, consistent with this statement, he was probably on a list in the first place, but the circumstance, his information about him is different now. So based on currently available information, he's not, he's no longer satisfies the criteria, but not that he didn't, that the original criteria and the original factors were incorrect. Your Honor, it could also, it could also be to the contrary. It could be that the reason he was placed on the list in the first place was for unconstitutional reasons. Or, for example, it could be that we allege that he was placed on the list to be coerced to inform on fellow congregants at his local Portland area mosque. That could be the reason why, it could be that he, to make him turn informant as we pled, it could also be that the Portland area mosque is a hot mosque. And therefore, after he returned to the U.S., he was no longer in Portland. He had to reside in Seattle at that time and seek different employment. And so therefore, the reason initially... So he went back to Portland and re-affiliated with that mosque, he could go back on the list. Exactly. That's possible. There's no way we can know because the reasons are entirely secret. We have no idea. And this court invited the government to take three detailed, simple steps, outlined what those steps could be to move Fickrey's claims. And one, it was a sure plan if he would not be banned for the same reasons. The declaration doesn't do that. It just says he won't be placed on the list in the future based on currently available information. The information could be that he no longer is at the mosque. As soon as he goes back to the Portland area mosque, they could put him back in. But if it had followed this court's instructions and said, we declare we won't ban you for the same reasons, that's what the court invited, it would satisfy the first step. However, that's just one of three steps. The other was verify the implementation of procedural safeguards, conditioning its ability to revive plaintiff's status on the receipt of new information. There's no procedural safeguards. All this is is an individualized determination untethered to any explanation or change in policies, much less an abiding change of policies, as this court said, citing the American cargo case. And more importantly... I have a technical question. Yes. Are we looking at the prior opinion sort of as precedent, or are we looking at it as the law of the case, such that whatever may be true, whether every jot and tittle of this is required by other case law or consistent with other case law, this is what we decided, and that's what they had to do? Your Honor, just got a minute. If we could reserve after answering the questions some time for rebuttal. Go ahead, Brandon. I'm sorry. I got thrown off there. What was the question, Your Honor? I'll jump in. The FICRE decision... This is why you can't have a split argument. Yes, Your Honor. I've never seen anybody try to do this before. It's not like in a district court. We don't do that. Okay? I apologize, Your Honor. If I could comment on the question, Judge Berzon. The FICRE, and if Judge Rollinson was on the panel, and the focus of the questioning of Mr. Waldman last time in 2018, was about whether or not, after offering this declaration, whether that was going to be satisfying the Voluntary Succession Doctrine. And from the panel, you could see an overwhelming concern that if the Ninth Circuit did not apply the Voluntary Succession Doctrine, that it would unsettle clear precedent that deals with a situation like this, where in 2013 the government had a chance to remove them from the no-fly list, and they did it. When they revised the provisions in 2015, they had a chance to remove them from the no-fly list, and they did it. And then only after the motion to dismiss had been filed, out of the blue, after the conclusion of the administrative process, that's when we got a notice that the government had removed them from the no-fly list. And so it is. In the last few sentences of the Ninth Circuit's decision in FICRE, where not only that the Voluntary Succession Doctrine applies, but also that the case is not moved, rather than vindicating Yotus FICRE's claims, the government's declaration doubled down and vindicated itself, Your Honor. All right. Now, you're supposed to argue about the no-fly watch list. I don't know what that means. But let's assume we thought it wasn't moved. Where does that leave the case? If this case is not moved and the Voluntary Succession applies, then Yotus FICRE's claims should be litigated as if he was on the no-fly list. I understand. What are the claims that then should be litigated? The travel-related claims, which sound both in substantive due process and procedural due process, as well as the stigma-plus claims. And the stigma-plus claim, there's the generalized stigma, but the plus has different parts. The no-fly list consequence, the flight ban that the no-fly list imposes, is a plus. The different segregated processes that everybody on the watch list get treated as suspected terrorists, that's a plus. So, basically, you have two different substantive due process claims, is what you're saying. One of them is based on the travel itself. I'm assuming that the no-fly list is back. One is based on the travel itself, and one is based on the stigma and the things that happened to him because he was on the list. The stigma-related claims are only procedural due process claims. Travel-related claims are substantive due process related to the flight ban that prevents people from exercising the right of interstate travel, the right to international travel, and that's just substantive due process. There is some crossover between the two in terms of the plus itself. Remember, a plus is a right or benefit that is, from Paul V. Davis, from the Supreme Court, is, quote, altered or extinguished, unquote. And the Ninth Circuit has charted a very particular course with regards to stigma plus jurisprudence. In Humphreys, Judge Bybee, writing for a unanimous panel, explored the plus factor and what it is and what it means in the Ninth Circuit in a way that other circuit courts have yet to break that ground. And what the Ninth Circuit said in Humphreys was that it's not simply the extinguishment of a right, it's also the alteration. But an alteration of a right is accomplished, as Humphreys specified, is accomplished any time agencies are situated to reflexively check a stigmatizing list. And that's exactly what the watch list does. Every time Jonas Fickrey travels, he is screened against the watch list. There are two problems with that, if we're only talking about the watch list. I understand if we're talking about the no-fly list, it's somewhat different. First problem, obviously, is there are now four circuits that have said resoundingly that this is not a good claim, at pretty much exactly the same circumstances. Is that right? No, Your Honor. This is the only... Your Honor, this is the only... the Ninth Circuit is on its own here because of its application of the Voluntary Secession Doctrine against federal government conduct. That's an extraordinary decision. That's a very, very rare decision to apply the Voluntary Secession Doctrine. So what you're saying is that the only distinction I can see is that Humphrey's case seems to take into account things that haven't yet happened but could happen as a result of being on this list. And the other courts say, no, if it hasn't happened to you, it doesn't matter. Is that the main distinction? And there's also some distinction, maybe, on this causation question, whether it has to cause it, although in Humphrey's it kind of did cause it. Yes, I think Your Honor is right that a big difference between the Ninth Circuit's jurisprudence from Humphrey's and other circuits is what Your Honor's point was, that the status that is conferred by being on the watch list is something that affects people's lives when they travel. But also remember Jonas Fickrey is a truck driver. If he wants to get a traveler worker identification credential, he's going to be screened against the watch list. Even though he hasn't done it yet. Because in Humphrey's, I guess they hadn't done it either. There were a bunch of things that could have happened and hadn't happened. I don't think. Yes, Your Honor. Yes, Your Honor. In Humphrey's, the decision talks about the screening for it to be a peace officer, but the extent of the deprivation, the extent of the consequences is relevant to the court when it gets to assess the connection between what the government is doing in imposing what we feel in a willy-nilly manner, these deprivations that arise when people are pulled over for speeding by local and state law enforcement, when they're crossing the border. Or, for example, in Jonas Fickrey's case where they're traveling to other countries, sometimes their watch list status is leveraged as a basis for enlisting foreign intermediaries to detain them. Counsel? Counsel? I tried not to interrupt, but you didn't take a breath. I wanted to ask you in terms of procedurally, for the no-fly list claims, what did you ask for in your complaint? Did you ask for damages in your complaint vis-à-vis the no-fly list claims? No, Your Honor. Okay. We have not asked for damages. And the clearest relief that is remaining about the no-fly list is a decision vindicating Jonas Fickrey's position that it was illegal and he should not have been placed on the no-fly list. And the best evidence for that is he's not on the no-fly list now. Okay. If Jonas Fickrey, yes, Your Honor. Counsel, so I wanted to move from that to the watch list. So I'm trying to separate what we are called upon to decide in this case. So on the no-fly list claims, you're asking us to still grant the declaratory and injunctive relief that you sought from the beginning. But for the— Minus removal from the no-fly list, Your Honor. Right. Because he's already removed. Correct. Okay, so to me, the claims for the watch list allegations are not nearly as clear. Are you seeking damages for those? No, Your Honor. Okay. What are you seeking? We are not seeking damages. Unlike the no-fly list, the government has made no public disclosures about Jonas Fickrey's status on the bigger, more general watch list called the Terrorism Screening Database, which the no-fly list is really just an annotation of the entries in the Terrorism Screening Database. And so the government doesn't even publicly acknowledge what the inclusion standard is for that select T-list, that lesser watch list that results in the extra screening. And so there are standards-based inadequacies in the process, but the deprivation with just the— if you set aside the no-fly list and you're only left with a watch list, you're left with a situation in Humphreys where every time Jonas Fickrey is going to travel, he's going to be reflexively checked by authorities against the watch list. Every time he's pulled over by a law enforcement officer, wherever he's in the United States, he'll be reflexively checked against the watch list. And because the watch list is an accusation essentially that he's a war criminal, it's stigmatizing, and because there's other government— If it hasn't been disclosed, how is it stigmatizing? Because while the government has not disclosed it officially, and Judge Mossman's opinion I think explores this really perceptively, because the consequences of being on the watch list are meted out publicly at airports, at borders, at traffic stops, and the like, every single person who's on the watch list, because they see four S's stamped on their boarding pass every time, because they're told by screeners that they're on the watch list, because of how they're treated and their traveling companions and how they're treated, they know that they're on the watch list. And Judge Mossman, we're not— So assuming that's true, what is the— in other words, that there was stigma, if the no-fly lists were out of the case, on the watch list issue, what's the plus? The plus is other government action that tangibly affects Jonas Fickrey's interests. And so just like in Humphrey's, the CACI database, C-A-C-I, I'm sorry, I can't—the Child Abuse C-A-C-I. That database stood in the way of people volunteering or getting employment with companies that are dealing with children. That was documented and known. Here, we don't know, as I understand it, anything much about what happens to people who are on the watch list, do we? We do, Your Honor. At this stage, the allegations and the complaints should be taken as true, and those allegations are well-pled based on extensive discovery. In other cases, based on public disclosures around the watch list, the only things that we've learned about the watch list since this court has last passed judgment on it have been alarming. The watch list has only grown in size. It's only expanded the number of consequences it imposes on everybody. And the stigma plus, doc, yes, Your Honor? With regard to the travel implications itself as a plus, it seems to me you've got a major problem in Gilmore v. Gonzales, do you not? No, Your Honor. Gilmore v. Gonzales dealt with the neutral regulations that were intended to facilitate the orderly access of air travel by providing IDs. And even in Gilmore, I believe that there was an alternative option, that you didn't have to provide their IDs. You could answer some questions at the airport about your background, and they'll let you in without an ID. For one thing, it said that you don't have a right to travel by airplane. Well, it did use that language, and there has been a few cases that have used similar language, but a close look at what was actually held and the issues in Gilmore I think reveal that the questions about whether an ID requirement, which I believe was the issue in Gilmore, is that comparable to the flight ban that the no-fly list imposes or the humiliating, degrading consequences that are imposed on people in TSDB. Okay. Recall. We've let you go way over your time. Thank you, Your Honors. And we'll maybe give one of you a minute in rebuttal. One of you, not two of you. We'll go to Mr. Waldman, please. Good morning, Your Honors. Well, it's still barely morning, but good morning. Joshua Waldman from the Department of Justice for the Appalese. The district court in this case correctly held that plaintiffs' no-fly list claims are moot, and there are three new factual developments that put this case on an entirely different footing than the first appeal. The first, of course, is the declaration. The second is that it has now been five years since plaintiff was removed from the no-fly list, and as this court held in White v. Lee and recently in Rancher's Cattlemen, that passage of time, specifically five years, can show that a government's position is entrenched and therefore it has met the voluntary cessation standard, even if it would not have done so at an earlier stage. So contrary to the last time when the court found that the timing was perhaps suspicious or at least didn't persuade the court that the government had met its burden,  twice he has flown since his removal from the no-fly list. And the third, yes? Is it your position that the government complied with the direction that was articulated by the panel in the prior appeal? We had very specific actions that were to be taken by the government. Yes, Your Honor. I believe that we did, and I do want to emphasize, I would agree with you that we did not do every single thing that the court mentioned in that opinion, but my understanding is that the panel went out of its way to twice say that there was no bright-line rule in determining mootness. Yes, there's no bright-line rule. This is why I think this is really a law-of-the-case case, right? There's no bright-line rule, and we're going to tell you what applies here. And they told you what applied here. And then you went and did quite the opposite, because for one thing, you didn't say that he was not properly on the list in the first place. You said he was properly on the list in the first place. Isn't that just the opposite of what was said? Well, Your Honor, I agree with you that the declaration does not address the question of the allegation of reputational harm from prior no-fly list status. What the declaration does address is whether or not there's any likelihood that his no-fly list status would recur in the future. It doesn't do that either, because all it says is that he will not be placed. It says that he no longer satisfies the criteria, and he will not be placed on a no-fly list in the future based on the currently available information, which I take to mean that something changed from when he originally was on the list, because you said that he was properly on the list originally. And if he goes back to doing whatever he was doing then, he will be put back on the no-fly list, or maybe. Is that enough to figure out what's down here? No, but if I may explain, Your Honor, I think it's a little bit of a semantic difference perhaps, but if somebody engages in a certain course of conduct, and then because of that, it gives rise to a reasonable suspicion that they deserve to be on the no-fly list, and then later they cease that conduct, and the government, therefore, comes to the conclusion that they no longer properly belong on the no-fly list. And then that same person resumes that same set of suspicious behavior at a later date. It's our view that that is not the same old information. That is new information that someone has resumed previously suspicious conduct. And one example of that might be, for example, if you were at a terrorist training camp and you engaged in training for terrorist activity, and the government thought that was suspicious, but then at some point in time, you ceased. You left the training camp. You severed all ties with known terrorists. You renounced your previous behavior, and the government was persuaded that you don't belong in the no-fly list for that reason. And then some period goes on, and you resume the same conduct that you did before. You go back to the terrorist training camp. You reestablish those ties. It's our view that's new information. Well, it seems to me that that's a very good example. I mean, one that's closer into this case, I gather, is that he was in Portland. There's no assurance here that he won't end up back in the no-fly list. Were there procedural problems he had before? Well, first of all, I would say to that, Your Honor, it's in the record, and this is a supplemental excerpt of the record, page 22. Our watch listing procedures prohibit watch listing solely based on religious exercise or religious freedom. So that hypothetical itself, I think, is far-fetched and outside the bounds of the watch list. But I do think, as a generalized matter, if you resume behavior that would properly qualify you on the no-fly list, and since the government has said he was put on the no-fly list in the past based on applicable procedures, by definition, that would mean that your hypothetical would not be the reason, because that would not be in compliance with applicable procedures. Then why was the government so reluctant to commit that he was improperly placed on the list initially? Well, I think, Your Honor, what is important to understand about the no-fly list is that it's a highly dynamic list. People go on, off, people's status change over time, because the government collects and develops intelligence all of the time and continues investigations. And so without saying anything about this particular plaintiff specifically, I'll just say as a general matter, suppose someone does something that seems suspicious to the government to rise to the level of watch listing, either no-fly list or some other list, and because they meet the reasonable suspicion standard, no one is saying this has been proven beyond a reasonable doubt. It's just a reasonable suspicion standard. And they're put on a watch list because at that time, based on what we know, they meet the standard. But then investigations continue and further intelligence is developed. That may exonerate a person. That's not answering my question. I'm sorry. My question is, then this case is no longer moot. It's not moot. Because if the government is not willing to say that Mr. Fikura was placed on the no-fly list wrongfully, then he's entitled to have his declaratory relief action and injunctive relief action go forth for a determination whether or not he was wrongfully placed on that list. Because the government is not willing to make that statement now. Okay. May I address that in two parts, Your Honor? The first is that the claim that you're positing, that he was wrongfully placed on the list, is a substantive challenge to his process, a substantive due process challenge. I'm not making a claim. I'm pointing you to what the prior panel ordered. Go ahead. I understand. Prior panel begins with saying the plaintiff has a substantive and a procedural due process claim at that time. The plaintiff has now relinquished his substantive due process claim and only brings a procedural due process challenge, which is about the notice. And, in fact, in response to our argument that a substantive My understanding from what we were told by your opposing counsel is, their understanding is that there is a substantive due process claim with regard to the right to travel and a procedural due process claim triggered by stigma plus allegations. With all due respect to opposing counsel, Your Honor, in the reply brief at pages 26 through 28, they are very clear that they are not bringing in a substantive due process challenge anymore. And there's two reasons why we know that. One is the district court dismissed the substantive due process challenge on the merits, and the plaintiffs have not appealed that determination. The second is we make an argument that under this court's decision in Casham, the district court would Just a minute. If the case is moot, they can't be arguing about the merits of it. The district court said it was moot. Your Honor, even if it's not moot, our argument was I know, but there can't be a waiver of something that they couldn't argue because right now the status of the case is that issue isn't in the case. Your Honor, if you permit me to just give the second part of the answer, I think it will address your question, which is assume that the substantive due process challenge of the no-fly list is live. It's our view that under this court's decision in Casham, the district court would not have subject matter jurisdiction over that claim. That's the clear holding of this court in Casham. And in response to that argument, the plaintiffs say, well, we're not bringing a substantive due process challenge. We are bringing a procedural due process challenge. It's the government's view that that also, the district court is without jurisdiction over that as well. But our point is that they're avoiding the subject matter jurisdiction question by saying we're not bringing the substantive due process claim. And because they're not bringing a substantive due process challenge to the no-fly list, Judge Rawlinson's point about getting relief saying they never should have been on the list cannot happen because it's only about whether the procedures were proper and not the substance of the decision. The second thing that I would say, Judge Rawlinson, is that it's the government's view that if we show, meet our burden to show that the challenged government action has ceased and is not likely to recur, and therefore we meet the voluntary cessation standard, that a claim that there is reputational injury that is a lingering effect from the ceased and non-repeating government action cannot, as a constitutional matter, keep a claim live when that is the only remaining lingering effect. And that's what the Supreme Court held in Spenza v. Chemna. That's what this court said in the Jackson case that's cited in our brief. And that's what the D.C. Circuit held, for example, in a case like Gold v. Obama. Perhaps the district court in this case would be persuaded by that, but now the ruling is that this case is moot, and so none of that. Those are mootness arguments. That's a mootness argument, Your Honor. The mootness argument is that you did not comply with the steps that we directed as being a sufficient showing of voluntary cessation of the conduct, because we were not persuaded that the conduct is unlikely to recur. That's why we put those specific items in the decision, because otherwise there was no assurance that that conduct would not be repeated. And I just get the sense that the government is trying to evade having to comply with those specific directions that were in the opinion. Well, Your Honor, if I may answer that. I think what we were trying to do, and perhaps we misunderstood your directions, but what we were trying to do is we see there as two different arguments about mootness that were outlined in the prior decision and we're talking about today. One is the question of whether the no-fly status is likely to recur in the future. And if it is, then the claim would not be moot. The second part of the argument, which I understand to be a different type of mootness argument, is even if the government made it perfectly clear that the no-fly status wouldn't recur, for example, by just abolishing the no-fly list for everybody for all time, everyone would agree that then there's no chance that he's going to get back on the no-fly list. I think the argument is even then, the old status that existed at some point in the past caused reputational harm that then continues to occur and that would keep the claim alive. I don't think that's it at all. The way that you are understanding the mootness issue, you're really saying that Fikra himself is who made it moot by changing his behavior and that if he changes his behavior back, then it's a new and different case. And he's saying, well, no, I should have the option to change my behavior back unless you're going to tell me that I wasn't on the list right to begin with. So you're putting a burden on him as to his continuing behavior, which may get him back on the no-fly list if he does again what he did before, whatever that is. And you're not saying, you never have said, and you won't say, and you're not saying now that if he doesn't continue his present behavior but goes back to his earlier behavior, he can get back on the list. That isn't your changing. You're narrowing his field of action by saying he could get back on the list again. So why is he entitled to litigate that? Because, Your Honor, we're saying that the only way he would get back on the new list is if there was some new information, not the old information. But it's not our argument that he stopped doing some behavior. That's their hypothetical argument. That's not our argument. Well, no longer means something. You say he no longer is, which certainly suggests he was. And you said earlier that he was properly on the list to begin with. That certainly makes it seem like something about his behavior has changed because you said he was properly on it to begin with, and it no longer is. Your Honor, I don't think you could make that inference at all. And as I was trying to explain before, there are many reasons why over time you might become removed from the no-fly list. It's not necessarily because of your behavior. It may be that you were put on because there was an investigation that made it seem like there was something suspicious. But over a period of years and investigation, it turned out to be innocent or harmless or not as suspicious as before, or we learned other information about the person as opposed to their particular conduct. Counsel, the difficulty with your argument is that if we accept that, then Mr. Fickrin never has an opportunity to litigate whether he was wrongfully placed on the no-fly list initially. I think that's correct, Your Honor, but that would be no different, for example, from Spencer v. Chemna. There, someone's parole was revoked because of a finding that they smoked crack and committed rape, and that's why they belong back in prison. And the Supreme Court said when that prison sentence expired, the case was moot. And he said, but what about the reputation from this finding that I did all these things that caused me to have my parole revoked? That harmed my reputation going forward, and the Supreme Court said that is not constitutionally sufficient. Except that once his parole was revoked and he was out of prison, he wasn't going to get back in prison under those circumstances. Here, the no-fly list is still there, and according to what is said in this declaration, if he continues that he could be back on it again for doing the same thing he did the first time. Well, that's the same thing as in Spencer, Your Honor, which is if he repeated the behavior that got him in prison, he would go back to jail. And there's no way to guarantee that that's not going to happen. If something happens for this person, whether they resume certain suspicious behavior or they start engaging in terrorist activities, there's no way to know the future. And the last time that we were here, I said, well, we can't make... The difference is that in the Kimbrough case, it was known exactly what the behavior was that resulted in the government action. Here, we don't know why the government took the action that it did, and the government says we won't admit that he was wrongfully placed on the list. So if that's the government's position, it seems to me that Mr. Fickler should be able to litigate whether or not the government's position is violative of his constitutional rights. Well, I understand, Your Honor. I think this is no different from Gull v. Obama in the D.C. Circuit, where someone was held in Guantanamo Bay and labeled as an enemy combatant. After he was removed and sent back to Afghanistan, the government specifically said, we are not saying removing the enemy combatant label, we are not saying that he was wrongfully put in Guantanamo Bay, but the case was moot. And the D.C. Circuit specifically said in that case, his claim of reputational harm that lingers does not keep his claim from being moot. So you have a case here where the judges specifically said, here is what you have to do to meet your burden of showing that this case is moot. And you didn't do that. And so that's the law of the case. If you didn't do that, then we are not, I don't see this as being a situation where we can say, well, the government didn't comply with the showing that's required to show that the case is moot, but we'll just say it's moot anyway. I just don't, I don't follow that reasoning. Well, with respect, I think that we did, I agreed at the outset that we didn't do every single thing that you said, but I took that opinion to mean you literally don't have to do every jot and tittle of it, but because we're giving you a non-exhaustive list, because we don't have bright line rules, but we did, one of the things this court said was that we had to say, if he was ever put back on the no-fly list, it would be predicated on a new and different factual record. I think the fair reading of our declaration does that, Your Honor. But you only said new and different from now, not new and different from originally. Well, as I was trying to make the point before, Your Honor, that if a repetition, a resumption of suspicious activity, if that's what it is, would be new information. It's a new pattern of behavior. It doesn't, we're not saying, what we're saying is, if you came with, if someone comes with a nomination, suppose this case was found to be moot, and then a year later, someone in the FBI nominates him, and the Terrorist Screening Center gets this nomination, and they see nothing has happened since 2015 or 16, whenever he was removed from the list and the declaration was issued, and there's nothing new, then he's not going to put him back on the no-fly list. I want to go to your jurisdictional argument. Because nothing has happened. I want to go quickly to your jurisdictional argument, and then we should release you or whatever. And the reason I'm doing this is, I really think you were not forthcoming about this either. Because what the plaintiff said in his reply brief was that it doesn't, the appeal doesn't concern the substantive due process claims because the district court dismissed them, i.e. as moot. So, of course, it doesn't. But they didn't say they were withdrawing their substantive due process claim, as you represented earlier. And they also said, then, that the, that Section 46-110 doesn't apply because he challenges on procedural due process grounds the entire watch-listing system, including the initial decision. So, and that's a distinction he made. So, I'm concerned about the fact that I don't think you've been very forthcoming here. Well, Your Honor, I think our point was, with respect. Your point was, you said to me directly that he is, he says in his reply brief that they're not pursuing a substantive due process claim. They absolutely did not say that. Well, what he says is that Casham doesn't apply to his case because he doesn't bring a substantive due process challenge to the no-fly list. That's because he didn't bring one because it's not before the court now because it was declared moot. Well, but that's not an argument. That's not an answer to the jurisdictional question. Our point is. Well, then he has an answer to the jurisdictional question, which is that if the issue comes back, we're not, we're challenging the initial placement, not what TSA did in refusing to take it off. That's what he says. So, we're back to Judge Rawlinson's point, that he is trying to litigate the question of what he was doing on that list to begin with. Okay. Your Honor, I take your point, but I think what you're just saying is that he doesn't have a substantive due process claim for his status as of 2015. He's got it as of some point in the past. And if, Your Honor, if you think that there's, our point is that under Casham, a substantive due process challenge post-2015 to the no-fly list, there's no district court jurisdiction. Not to the no-fly list, to what TSA's role in the no-fly list is, which is not to put people on it, but to determine whether they should be taken off it. Is that accurate? I think that's, I think if I understand your question, yes. So, he's not saying it's in the past. He's saying we're challenging what the TSA does in putting people on the no-fly list and putting me on the no-fly list originally, and in the possibility that I'm going to be put back on it again. And we're not challenging, we're challenging what TSC does about that, and we're not challenging what TSA does in litigating it thereafter, which is a coherent position. Okay, I thought that he had said, we want to litigate if we go back, is his no-fly list status as if he had never been removed, which means litigating the substantive claim of being on the no-fly list post the 2015 procedures. Maybe I'm misunderstanding his claim. But I do think that, you know, I was disturbed when I went back to look at the reply brief with your representation. Okay. Your Honor, I'm sorry, if I may just have one more minute of your time. Go ahead. If you disagree with us and you think this claim is live, and you disagree with us and you think the district court would have some subject matter jurisdiction, I think that there is a fair amount of confusion, certainly on my part, and I think the district court shared it as well, as to what claims would be live, substantive versus procedural due process, and what point in time those issues ought to be litigated if they're in the past, if they're in the present, in the future. Honestly, I think that we're a little bit confused about that, and certainly if you disagree with us on the jurisdictional questions, we'd ask that you inform us for the remand on what exactly those issues are, because I'm not sure that I fully understand. Let's sort that out, because the district court short-circuited the process by saying it was moot. So why wouldn't it be reasonable to send it back to the district court saying you were wrong on the mootness point, and then the parties get an opportunity to argue which claims are still being sought? Why wouldn't that be fair? Well, I'm not saying that you're powerless to do that. If that's how you want to proceed, that's perfectly fine. I'm just saying I think it would be helpful to the district court and to the government when building a record in this case to be litigated, to know are we determining the no-fly list status in 2011 or 2013, so that we know what record to put before the district court, or whether the question is his no-fly status in the time right before he was removed. And I'm just asking if the court would give us some guidance as to that as well. I appreciate the suggestion, and we will look into it.  Thank you, Your Honor. We will have one of you argue for two minutes. Thank you, Your Honor. I'm going to start with jurisdiction. Here, the only jurisdictional hook that the government has is the TSA's role via the DHS trip redress process. Here, because both in 2013, prior to the DHS trip revisions, as well as post-2015, subsequent to the DHS trip revisions, the TSA administrator, or whoever it was that decided the outcome of the DHS trip process, didn't do anything. Maintained the status quo. The court right declaration indicates that it was TSC that advised the defendants' counsel that Jonas Fickrey was off the no-fly list, and that is, we think, dispositive of the jurisdictional claims. Here, the... They advised them, but that... I mean, my understanding is that TSA is basically an appeal body. No, Your Honor. TSA has... TSA's only role is to make the final decision at the end of the DHS trip process. That's its only removal... That's the only place where its removal authority comes into play, and so outside that DHS trip process, TSC, which is a department of the FBI, controls who goes on the list and who goes off of the list, and that's what appears to have happened here, and any ambiguity in the record can be explored on remand, but we think that last time the Department of Justice was up here, they presented the court with this idea that a declaration specially designed, tailored to the court's jurisprudence, was going to somehow obviate the need to adjudicate the constitutionality of the no-fly list as applied to Jonas and beyond, but it didn't do that, and on remand, I believe that the court should make clear in its decision that there is no escaping from adjudication of the travel-related claims that sound both insubstantive and procedural due process, as well as the stigma-related claims that are brought under the stigma plus doctrine. Thank you very much. All right. Thank you very much. Thank all of you. It's a very complicated and interesting case. FICRA versus FBI is submitted. We'll go to the last case of the day.
judges: BERZON, RAWLINSON, Antoon